# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**BOBBY JOE MITCHELL**                                                                              **PLAINTIFF**

**v.**                                                                              **CIVIL ACTION NO. 5:14cv6-MTP**

**FRANK SHAW, ET AL.**                                                                              **DEFENDANTS**

## OPINION AND ORDER

THIS MATTER is before the Court on the Motion for Summary Judgment [34] filed by Defendants James Burke, M.D. and Patsy Wiley, and the Motion for Summary Judgment [36] filed by Defendants Frank Shaw and Ollie Ward. After careful consideration of the submissions of the parties and the applicable law, the Court finds that the Motions [34] and [36] should be granted, and that this matter should be dismissed with prejudice.

## BACKGROUND

Plaintiff Bobby Joe Mitchell, proceeding *pro se* and *in forma pauperis*, filed the instant civil rights action on or about January 29, 2014, pursuant to 42 U.S.C. § 1983.[1] This suit arises from events which took place while Plaintiff was a post-conviction inmate incarcerated at Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi, where he continues to be housed. His claims and requested relief were clarified and amended through his sworn testimony at a *Spears*[2]

---

[1] *See* Complaint [1].

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that allegations made at a *Spears* hearing supersede claims alleged in the complaint).

hearing held on January 20, 2015.[3]

Plaintiff claims that he was denied adequate medical care in connection with the treatment of his thyroid condition. According to Plaintiff, he began to lose weight and submitted a sick call in September, 2013. Thereafter, Defendant Dr. James Burke ran two set of medical tests, diagnosed Plaintiff with a thyroid disorder, and prescribed Plaintiff medications for his condition.[4]

Plaintiff alleges that in December, 2013, he began to experience pain and swelling in his throat and submitted a sick call. During a visit with Defendant Burke in December, 2013, Plaintiff asked Defendant Burke about an additional examination regarding his throat. Plaintiff alleges Defendant Burke told Plaintiff he would be examined by an outside physician. According to Plaintiff, however, he was not examined by an outside physician. Plaintiff also alleges that Defendant Burke did not seem concerned about his condition. Further, Plaintiff alleges he sent Defendant Warden Frank Shaw a letter regarding his medical treatment, and about the fact that he was not examined by an outside physician.[5]

On December 13, 2013, Plaintiff claims he became very ill and was unable to get out of bed. He alleges Defendant Wiley, a nurse at WCCF, examined Plaintiff and stated that he needed to see a doctor or nurse practitioner. According to Plaintiff, he was never examined by a doctor or nurse practitioner. Plaintiff further alleges that Defendant Wiley makes determinations regarding who should be seen in the medical department. Plaintiff alleges that Defendant Wiley informed him that he would have to act civilized if he wanted to be seen in the medical department.

---

[3]*See* Omnibus Order [24] at 1.

[4]*Id.* at 2.

[5]*Id.*

Plaintiff also alleges that, in December 2013, January 2014, and March 2014, Defendant Ollie Boyd, a correctional officer, turned him away from the medical department because of his unruly behavior during prior visits.[6]

According to Plaintiff, he continues to suffer from weight loss, swelling, and muscle weakness. He alleges that Defendant Burke and the medical staff at WCCF do not know how to treat his condition and have been deliberately indifferent to his medical needs. Plaintiff seeks $800 in compensatory damages from each defendant and seeks an injunction requiring WCCF to increase its medical staff. He further seeks appropriate treatment for his medical condition.[7]

## **STANDARD**

A motion for summary judgement will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 1069, 1075 (5th Cir. 1994) (emphasis omitted).

---

[6] *Id.* at 2-3.

[7] *Id.* at 3.

## ANALYSIS

Deliberate Indifference

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001). A plaintiff must meet an "extremely high" standard to show deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quotations omitted). For a prison official to be liable for deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference is particularly difficult to establish when the inmate was provided with ongoing medical treatment. "Unsuccessful medical treatments, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (citations omitted). The plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Complaints that more treatment should have been ordered, without more, are insufficient to show deliberate indifference. *See Domino*, 239 F.3d at 756 ("[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.").

Finally, a prisoner's allegation that prison officials failed to timely provide him with treatment does not, by itself, constitute deliberate indifference. "[D]elay in medical care can only constitute an

Eighth Amendment violation if there has been deliberate indifference that results in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

In this case, Plaintiff's sworn testimony at the *Spears* hearing indicates that he received substantial medical attention in connection with his thyroid condition. At the hearing, Plaintiff testified that Defendant Burke ran two sets of tests before diagnosing him with a thyroid disorder.[8] Further, Plaintiff testified that Defendant Burke prescribed medications for his condition, and according to Plaintiff's testimony, Defendant Burke continued to treat him through December, 2013. Finally, Plaintiff testified that Defendant Wiley examined him on at least one occasion.[9]

Likewise, Plaintiff's medical records at WCCF reflect that he received consistent and extensive medical treatment in connection with his thyroid condition from September 2013 to at least February 2015. On September 21, 2013, Plaintiff was examined by Defendant Wiley in response to a complaint that he was rapidly losing weight. Defendant Wiley noted that there was no rapid weight loss shown on Plaintiff's chart at that time.[10] Additionally, on September 24, 2013, Plaintiff was seen by Defendant Burke in response to his weight loss complaint. Defendant Burke ordered several lab tests, including a "TSH" test.[11]

On October 7, 2013, Defendant Burke examined the Plaintiff and noted that his TSH test

---

[8]*See* Omnibus Order [24] at 2.

[9]*Id.*

[10]*See* Medical Records [34-2] at 11.

[11]*Id.* at 64-66; 70. A TSH test measures the amount of thyroid stimulating hormone (TSH) present in the bloodstream. TSH is produced by the pituitary gland and prompts the thyroid to make and release thyroid hormone. The test is typically administered when a physician suspects an overactive or underactive thyroid gland. *See* TSH test, Medline Plus, http://www.nlm.nih.gov/medlineplus/ency/article/003684.htm (Last visited July 27, 2015).

indicated hyperthyroidism. Defendant Burke then ordered subsequent tests to evaluate Plaintiff's thyroid function.[12] On October 16, 2013, Defendant Burke prescribed Tapazole (Methimazole) to Plaintiff for hyperthyroidism and noted that no nodules or masses were present.[13] Further, on October 21, 2013, Defendant Burke examined Plaintiff in response to complaints of neck pain and loss of appetite. Defendant Burke explained to Plaintiff that these symptoms were likely side effects of his thyroid condition that would take time to resolve.[14] On October 29, 2013, Defendant Burke again examined Plaintiff and reviewed the hyperthyroidism diagnosis with him.[15]

On December 3, 2013, Plaintiff was seen by Defendant Burke in response to a swollen throat complaint. During this examination, Plaintiff alleges that Defendant Burke indicated a need for an appointment with an outside specialist. However, Defendant Burke's notes suggested no outside appointment was necessary at that time.[16] Medical staff further noted that during this visit, Plaintiff became violent and overturned an examination cart, breaking some medical equipment.[17]

Further, on September 2, 2014, WCCF medical staff scheduled an appointment for Plaintiff

---

[12]*Id.* at 70.

[13]*Id.* at 72. Tapazole (Methimazole) is used to treat hyperthyroidism, a condition that occurs when the thyroid produces too much thyroid hormone. *See* Methimazole, Medline, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682464.html (Last visited July 27, 2015).

[14]*Id.* at 79.

[15]*Id.* at 77.

[16]*Id.* at 86-87. In a previous examination on November 12, 2013, Defendant Burke examined Plaintiff and explained that these symptoms were consistent with esophageal spasms, for which there is no complete cure. Additionally, Defendant Burke checked Plaintiff's heart for any abnormal activity and found no heart problems were present.

[17]*Id.* at 87.

at Gastroenterology Associates in McComb, Mississippi, in response to a subsequent swollen throat complaint. Defendant Burke requested an EGD and prescribed medication to Plaintiff on September 3, 2014.[18] On October 30, 2014, Nurse Practitioner Mary Thornton examined Plaintiff, performed the EGD procedure, and noted that the treatment plan included PPI therapy and a return for dilation.[19] Further, on December 8, 2014, Plaintiff returned for a follow up with Thornton, who noted Plaintiff's throat problems had improved.

The Court further notes that Plaintiff's medical records indicate that he refused various medical treatment on multiple occasions including December 13, 2013, January 16, 2014, April 4, 2014, May 29, 2014, June 3, 2014, June 19, 2014, and November 25, 2014. Additionally, in regard to Plaintiff's remaining thyroid treatment, Plaintiff's medical records indicate that Defendant Burke consistently treated him until at least February 9, 2015, when his TSH hormone returned to normal production.[20]

The Fifth Circuit has made clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (affirming district court's dismissal of inmate's

---

[18]*Id.* at 129. An EGD procedure allows physicians to view and diagnose problems in the upper gastrointestinal (UGI) tract, including the mouth, throat, and esophagus. *See* Esophagogastroduodendoascopy, http://www.hopkinsmedicine.org/healthlibrary/test_procedures/gastroenterology/esophagogastroduodenoscopy_92,P07717/ (Last Visited July 29, 2015).

[19]*Id.* at 139-140. Proton Pump Inhibitor therapy ("PPI") is used to treat acid reflux. PPI medication reduces the amount of acid in the stomach. Proton pump inhibitors, http://www.nlm.nih.gov/medlineplus/ency/patientinstructions/000381.htm (Last visited August 10, 2015).

[20]*See generally* Medical Records [34].

deliberate indifference claims as frivolous); *Harris v. Epps*, 523 Fed. App'x 275, 275 (5th Cir. 2013) (per curium) (affirming summary judgment where inmate's medical records reflected that he had received ongoing medical treatment). The Court notes that Plaintiff has responded to the motions for summary judgment, but has offered no evidence contradicting his medical records.

Although Plaintiff is clearly dissatisfied with the Defendants' treatment of his thyroid disorder, his own testimony as well as his medical records indicate that he regularly received ongoing treatment for his condition. Plaintiff does not allege that Defendant Burke or Defendant Wiley "refused to treat him, ignored his complaints, intentionally treated him incorrectly or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. Plaintiff merely argues that Defendant Burke, Defendant Wiley, and medical staff should have treated him in a different way, and that they should have referred him to an outside specialist. *See id.* (holding that additional treatment is a matter of medical judgement).

Plaintiff testified at the *Spears* hearing that he continues to suffer from weight loss, swelling, and muscle weakness,[21] but Plaintiff's medical records indicate that his thyroid condition improved in January 2015, and he no longer takes thyroid medication. Conclusory allegations that the WCCF medical staff does not know how to treat his condition cannot support a claim of deliberate indifference. *See Domino*, 239 F.3d at 756 ("[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.").

Finally, Plaintiff argues that Defendant Boyd turned him away from the medical department at least three times for unruly behavior. Plaintiff does not allege, and the record is devoid of any evidence, that he suffered any substantial harm as a result of his failure to receive medical treatment

---

[21]*See* Omnibus Order [24] at 3.

on the occasions at issue. *See Easter*, 467 F.3d at 463 (holding that a delay in medical care only implicates Section 1983 upon a showing that a substantial harm has resulted). As outlined above, Plaintiff received consistent medical attention in response to his complaints regarding his thyroid disorder. Plaintiff's medical records do not indicate an immediate health risk or complication at any point during his treatment.

*Respondeat Superior*

Plaintiff further argues that he sent Defendant Warden Frank Shaw a letter informing the Warden about his alleged inadequate medical treatment, and about the fact that he was not examined by an outside physician.[22]

However, Plaintiff does not argue that Defendant Shaw was authorized to administer medications or make any decisions regarding his medical treatment. Further, Plaintiff presented no evidence that Defendant Shaw was personally involved in his medical care at WCCF. *See Wagner v. Bay City, Tex.,* 227 F.3d 316, 325 (5th Cir. 2000) ("With no evidence indicating that [Defendant] had any direct involvement in the treatment decisions at issue, there is no way a reasonable jury could find their actions violated the rights of [Plaintiff]."). It is well established that Section 1983 does not create supervisory or *respondeat superior* liability. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Under Section 1983, a supervisor may only be found liable if he is personally involved in the constitutional deprivation or if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

Accordingly, for these reasons, the Court finds that Defendants James Burke, M.D., Patsy

---

[22] *See* Omnibus Order [24] at 2.

Wiley, Ollie Boyd, and Frank Shaw are entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motions for Summary Judgment [34] & [36] should be GRANTED. Accordingly,

IT IS, THEREFORE, ORDERED:

1. That the Motion for Summary Judgment [34] filed by James Burke, M.D. and Patsy Wiley, and the Motion for Summary Judgment [36] filed by Frank Shaw and Ollie Ward are GRANTED.

2. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 11th day of August, 2015.

s/ Michael T. Parker
United States Magistrate Judge